**UNITED STATES DISTRICT COURT**
                    **DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

                    Plaintiff,

v.                                        **MEMORANDUM OF LAW & ORDER**
                                          Criminal File No. 21-00074 (MJD)

XAVIER JEROME BUCKHANAN,

                    Defendant.

Katharine T. Buzicky, Assistant United States Attorney, Counsel for Plaintiff.
Xavier Jerome Buckhanan, pro se.

## I.      INTRODUCTION

This matter is before the Court on Defendant Xavier Jerome Buckhanan's

Pro Se Motions to (1) Appoint Counsel (Doc. 86), (2) Vacate Under 28 U.S.C.

§ 2255 (Doc. 87), (3) Proceed in District Court without Prepaying Fees or Costs

(Doc. 89), (4) Amend/Correct Motion to Vacate Sentence Under 28 U.S.C. § 2255

(Doc. 97), and (5) Application for Certificate of Appealability (Doc. 96).  Also

before the Court is the Government's Motion to Dismiss Motion to Vacate

Sentence Under 28 U.S.C. § 2255 as Time Barred.  (Doc. 94.)

1

## II.     BACKGROUND

On December 14, 2021, Defendant Xavier Jerome Buckhanan pled guilty to

Count 1 of the Indictment, Conspiracy to Distribute Methamphetamine,

in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  In his plea

agreement, Buckhanan admitted to the following facts and admitted that these

facts established his guilt beyond a reasonable doubt:

a.  From approximately June 2019 and continuing through on or about
    October 19, 2020, the defendant conspired with other persons to
    distribute a mixture and substance containing a detectable amount
    of methamphetamine.  More specifically, the defendant voluntarily
    and intentionally joined in an agreement or understanding with
    others to distribute methamphetamine.  The defendant acted
    knowingly and voluntarily when he so conspired and knew that his
    actions violated the law.

b.  As part of the conspiracy, the defendant obtained
    methamphetamine from known individuals.  The defendant then
    voluntarily and knowingly transported and organized the
    transportation of the methamphetamine to communities in and
    surrounding the Mille Lacs Indian Reservation and other areas in
    the District of Minnesota for distribution.

c.  The defendant agrees that as part of the conspiracy, he distributed at
    least 1,500 grams of a mixture and substance containing a detectable
    amount of methamphetamine on and around the Mille Lacs Indian
    Reservation and other areas in the District of Minnesota from at least
    June 2019 through October 19, 2020.  In furtherance of the
    conspiracy, on or about October 19, 2020, the defendant knowingly
    and intentionally possessed with intent to distribute approximately
    4.6 pounds of marijuana and 2,301.77 grams of methamphetamine

found during a controlled delivery and traffic stop conducted in
Eden Valley, Minnesota.

(Plea Agree. ¶ 2(a)-(c).)  Buckhanan waived his right to appeal any sentence

under 28 U.S.C. § 2255 except based on ineffective assistance of counsel.  (Id. ¶

12.)

On July 6, 2022, the Court sentenced Buckhanan to 160 months in federal

custody followed by five years supervised release.

At sentencing, Buckhanan and Defense Counsel discussed with the Court

their concern over Buckhanan's on-going difficulties receiving proper care for the

dwindling eyesight in his right eye—his only eye—and even about the

difficulties Defense Counsel had obtaining Buckhanan's medical records from

the Sherburne County Jail where he had been detained pending sentencing.  The

Court told the Government to provide it with an order so the Court could order

the United States Marshal to transport Buckhanan to FMC Rochester for

treatment prior to Buckhanan being designated to a BOP facility.  Probation and

Defense Counsel were instructed to work with the Government on this matter.

Two days later, both Defense Counsel and the Government sent letters to

the Court containing similar information: Buckhanan's medical records, which

were updated to include the record of an off-site medical visit to Edina Eye on

May 26, 2022, where Buckhanan also had an August 2022 follow-up visit scheduled, showed that Buckhanan was diagnosed with myopia (nearsightedness); astigmatism (blurred vision); presbyopia (age-related farsightedness); and photophobia (light sensitivity).  He was prescribed an antibiotic used to treat eye infections.  Annual polishing and routine cleaning of his ocular prosthesis were discussed.  Buckhanan received a new eyeglasses prescription and requested new glasses, but the request was denied because of the short amount of time he was going to be in the Sherburne County Jail.  (Doc. 73 at 1-2.)  When the Government asked the Marshal about a possible transfer to FMC Rochester, the Marshal stated there is usually a waiting list for that facility and there would likely not be bedspace available.  The Marshal also noted that the BOP assesses which inmates qualify for certain levels of care.  (Id. at 2.)

Thus, the Government stated that is would provide the order as directed, but given the obstacles to Buckhanan's placement at FMC Rochester, "additional options might be worth exploring," such as updating the PSR with the new information and amending the judgment with the medical records and a request for an FMC.  (Id.)  Buckhanan's J&C recommends that he be housed "in a facility

4

in or near Minnesota, such as FMC Rochester, to receive appropriate care for his

medical condition and to be near his family."  (Doc. 71 at 2.)

Defense Counsel's letter focused on Buckhanan's concern about the

urgency for him to receive "specialty care" and eyeglasses with an appropriate

prescription, given that he only has one eye.  (Doc. 75.)

On August 28, 2023, Buckhanan filed a pro se motion asking for additional

time to file a 28 U.S.C. § 2255 motion to vacate, set aside or correct sentence.

(Doc. 81.)  On August 31, 2023, the Court denied the motion.  (Doc. 83.)

Buckhanan filed the instant Motion to Vacate Under 28 U.S.C. § 2255 on February

2, 2024.  (Doc. 87.)

Other facts will be discussed as necessary.

## III.    DISCUSSION

### A.    Standard for Relief under 28 U.S.C. § 2255

A prisoner in custody under sentence of a court established by Act
of Congress claiming the right to be released upon the ground that
the sentence was imposed in violation of the Constitution or laws of
the United States, or that the court was without jurisdiction to
impose such sentence, or that the sentence was in excess of the
maximum authorized by law, or is otherwise subject to collateral
attack, may move the court which imposed the sentence to vacate,
set aside or correct the sentence.

28 U.S.C. § 2255(a).

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of
> constitutional rights and for a narrow range of injuries that could
> not have been raised on direct appeal and, if uncorrected, would
> result in a complete miscarriage of justice.  A movant may not raise
> constitutional issues for the first time on collateral review without
> establishing both cause for the procedural default and actual
> prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted).

Alternatively, the procedural default can be excused if the defendant can

demonstrate that he is actually innocent.  Bousley v. United States, 523 U.S. 614,

622 (1998).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion,

"[u]nless the motion and the files of the case conclusively show that the prisoner

is entitled to no relief."  28 U.S.C. § 2255(b).

> [A] petition can be dismissed without a hearing if (1) the petitioner's
> allegations, accepted as true, would not entitle the petitioner to
> relief, or (2) the allegations cannot be accepted as true because they
> are contradicted by the record, inherently incredible, or conclusions
> rather than statements of fact.

Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

**B.    Buckhanan's Stated Grounds for Relief**

Buckhanan asserts that he is entitled to relief because defense counsel was

ineffective in connection with his guilty plea and sentencing, in particular for

failing to recommend a 3-level reduction in total criminal offense level for acceptance of responsibility and for failing to file a notice of appeal.

Although Buckhanan's arguments are somewhat difficult to parse, he also appears to argue that his plea should be set aside for the following reasons: (1) his plea was not knowing because his counsel did not advise him about various issues that will be discussed in detail below; (2) that Government counsel committed prosecutorial misconduct because this crime was committed on the Mille Lacs Indian Reservation and the Special AUSA in this case is from that reservation; (3) that there was no evidence of a conspiracy in this case (i.e., that the Government did not prove its case against Buckhanan); and (4) that the Government committed a <u>Brady</u> violation because the record does not contain lab tests related to the purity of the methamphetamine seized in this case or to the type of methamphetamine seized (i.e., whether it was d-methamphetamine or l-methamphetamine). Buckhanan also notes that the transcript of his sentencing hearing does not explain why the Court granted his motion for a downward departure, although the Court is unsure if this statement is meant to be an argument or not.

### 1.  Timing

A one-year period of limitation shall apply to petitions under 28 U.S.C. § 2255.

The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

None of the four available grounds apply to permit Buckhanan's current § 2255 Motion.

### a)  Date on Which the Judgment of Conviction Became Final

The Criminal Judgment in this case was entered on July 7, 2022. (Doc. 71.) Buckhanan did not file an appeal. His judgment became final on July 21, 2022,

the date on which the 14-day period for filing a notice of appeal expired.  Fed. R.

App. P. 4(b)(1)(A); <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 816 n.2 (8th Cir.

2008).  Buckhanan had one year after his conviction became final to file his § 2255

petition, yet he waited almost six more months to do so.  Even Buckhanan's

motion for an extension to file a § 2255 motion was filed out of time.  This ground

is not applicable.

      **b)**    **Date on Which a Government Impediment Was Removed**

    Buckhanan does not allege any Government impediment to his ability to

file his § 2255 petition.

      **c)**    **Date on Which a Right Was Newly Recognized by the Supreme Court and Made Retroactively Applicable to Cases on Collateral Review**

    In his Motion to Amend/Correct Motion to Vacate Sentence Under 28

U.S.C. § 2255 (Doc. 97), Buckhanan references President Biden's proposal to

reclassify marijuana from a Schedule I drug to a Schedule III drug.  Buckhanan

appears to argues that proposal shows that "the weight of meth will go down" in

his case.  (<u>Id.</u> at 1.)  First, the proposed marijuana reclassification is a long way

from being adopted and certainly has not been recognized by the Supreme

Court.  Second, there is no indication that if it is adopted, the change will have

any bearing on other controlled substances such as methamphetamine. Thus, this ground is not applicable.

> **d)** **Date on which the Facts Supporting the Claims Presented Could Have Been Discovered Through the Exercise of Due Diligence**

Buckhanan does not claim to have discovered any new facts supporting his claim. Buckhanan does assert, however, that the Government withheld exculpatory evidence (i.e., lab results), which, possibly means that he argues the statute of limitations should be expanded. After a careful review of the record, the Court finds no allegation of exculpatory evidence that would support the claim that Buckhanan could not have discovered the facts supporting his claims through the exercise of due diligence until one year before he filed the § 2255 Motion with this Court. It is obvious that the Government did not receive the full lab report until right before the sentencing hearing. Thus, the Government did not "withhold" anything prior to that date. Second, the evidence was available for Buckhanan (or at least known to him) at that time, although, as Buckhanan states, the evidence was never made part of the record. Third, as is obvious from the sentencing transcript, the Court did not even consider this evidence in adopting Buckhanan's Guidelines. This ground is not applicable.

> **e)** **Equitable Tolling**

Equitable tolling may be available when extraordinary circumstances exist, beyond the petitioner's control, that would justify equitable tolling, and the petitioner has acted with due diligence in pursuing his petition.  See Byers v. United States, 561 F.3d 832, 836 (8th Cir. 2009).

Buckhanan argues that he was in the shu and did not have access to his paperwork, which is why his motion was filed out of time.  Confinement in the shu "does not constitute an extraordinary circumstance warranting the application of equitable tolling."  Chachanko v. United States, 935 F.3d 627, 630 (8th Cir. 2019)(citations omitted) (two-year confinement in the shu during time when defendant stated he relied on his attorney to file § 2255 petition did not warrant equitable tolling).  In addition, Buckhanan has produced no evidence showing that he diligently pursued his rights during the year he had to file his petition.  Notwithstanding Buckhanan's instant unsupported claim that his counsel failed to file an appeal, "[r]easonable diligence exists where a petitioner 'writes letters to his attorney asking [him] to file a habeas petition, contacts the court to learn about the status of his case, seeks to have his attorney removed for failure to pursue his case," and the like.  Id. (quotation omitted).  This ground is not applicable.

11

## 2.   Actual Innocence Exception

Habeas petitioners asserting an actual innocence claim will not be automatically time-barred if they file after the one-year limitations period has run.  McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).  Under this exception "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."  Id. at 392.  This is a "demanding" standard that requires the petitioner to present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial."  Id. at 385 (citation omitted).  This exception "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  Id. at 395 (citation omitted).  A petitioner's "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing."  Id. at 399.

Buckhanan asserts that the Government did not prove there was a conspiracy in this case and that the Government committed a Brady violation by not providing him with the final lab results proving that the methamphetamine was of the purity that the Government asserted and/or whether the

methamphetamine was l-methamphetamine or d-methamphetamine.  Part and

parcel of these claims is Buckhanan's unsupported claim of prosecutorial

misconduct because Buckhanan asserts that the Special AUSA in this case is

Native American and the crime in this case occurred on the Mille Lacs

Reservation.

First, to the extent Buckhanan thinks the allegedly withheld lab evidence

will assist him with an argument related to the difference between d-

methamphetamine and l-methamphetamine, that path of inquiry is without

merit because the Guidelines no longer distinguish between the two types of

methamphetamine.  United States v. Maggard, 156 F.3d 843, 849 (8th Cir. 1998)

("Prior to November 1, 1995, the Sentencing Guidelines distinguished between

the two types of methamphetamine and mandated harsher sentences for offenses

involving d-methamphetamine.  The distinction between 'l-' and 'd-'

methamphetamine was eliminated by Amendment 518, which became effective

on November 1, 1995.") (cleaned up).  The same is true regarding purity testing

because at sentencing, the Court stated that it would not consider the purity of

the methamphetamine when it sentenced Buckhanan.  Accordingly, the Court

adopted a total offense level of 32 instead of an offense level of 36, which the Government proposed based on the purity of the methamphetamine.

Buckhanan also argues that the Government did not prove there was a conspiracy in this case. Buckhanan pleaded guilty to participating in a conspiracy to distribute methamphetamine and offers no new evidence at all, much less anything that satisfies the "high bar" to make the Court think Buckhanan's plea should be set aside on this basis. In addition, one of the reasons for a plea and the benefit Buckhanan received from it by not having to face a jury on both counts of the Indictment was that the Government did not have to prove anything beyond a reasonable doubt. Buckhanan simply pled to the facts in the plea agreement in exchange for the certainty of not facing a trial and the possibility of going to prison after being convicted for both crimes for which he was indicted. See United States v. Lovell, 811 F.3d 1061, 1063 (8th Cir. 2016) (stating that defendant benefited from his plea agreement because in it the government agreed to dismiss remaining counts of the indictment, even though defendant stipulated to, and was sentenced to, sentence that ended up being longer than calculated Guidelines range).

Finally, and importantly, Buckhanan also alleges prosecutorial misconduct based on alleged prejudice because of the Special AUSA's ties to the Mille Lacs Band of Ojibwe.  (See, e.g., Doc. 95 at 19 (stating that "[t]he [prosecutor] is from the same native [reservation]" and therefore the AUSA had a "conflict of interest"); Doc. 88 at 40 (reacting to the Special AUSA's mention of the drug problem among Native Communities at the sentencing hearing: "What about the rest of the communities[?] It's a problem all over.  The U.S. Attorney works for the Government and not just the Native American.") (cleaned up).)

Buckhanan did not raise any of these remaining issues before sentencing, at sentencing, or on direct appeal.  The failure to raise an issue on direct appeal constitutes a procedural default, barring the issue from a § 2255 motion, unless the petitioner can show both a cause that excuses the default and actual prejudice.  Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997). Buckhanan argues that he was prohibited, in part, from filing a direct appeal because he was abiding by the terms of his plea agreement, which prohibited him from filing a direct appeal.  The Court need not address this argument

15

because it can dispatch Buckhanan's motions by addressing his other
arguments.[1]

First, the Court considers whether there is evidence of prosecutorial
misconduct.  Under Brady, "the suppression by the prosecution of evidence
favorable to an accused upon request violates due process where the evidence is
material either to guilt or to punishment, irrespective of the good faith or bad
faith of the prosecution."  Banks v. Dretke, 540 U.S. 668, 691 (2004) (citation
omitted).  "[T]he three components or essential elements of a Brady prosecutorial
misconduct claim [are]: [1] The evidence at issue must be favorable to the
accused, either because it is exculpatory, or because it is impeaching; [2] that
evidence must have been suppressed by the State, either willfully or
inadvertently; and [3] prejudice must have ensued."  Id. (citation omitted).  The
defendant bears the burden of establishing that the Government suppressed the
evidence.  United States v. Van Brocklin, 115 F.3d 587, 594 (8th Cir. 1997).

As discussed above, even if the Government had withheld evidence of lab
results on the methamphetamine, those results were not exculpatory.  To the

---

[1] Buckhanan also asserts ineffective assistance of counsel, in part, for failure to
file an appeal, and the Court will address the merits of these issues below.

contrary, had the Court adopted the lab results into the Court's Guidelines

calculation, Buckhanan's criminal history score would have been a 36 instead of

a 32. Moreover, there is no indication that the Government deliberately withheld

any evidence or that any prejudice ensued from the late arrival of the lab results.

Buckhanan has not come close to satisfying his burden to show that the

Government withheld evidence. In addition, Buckhanan's argument that the

Government did not prove there was a conspiracy is without merit. Finally,

Buckhanan's distasteful allegation that the Special AUSA was somehow

conflicted because of his relation to the Mille Lacs Band of Ojibwe does not merit

discussion. "[B]efore an evidentiary hearing is required, it is necessary for a

petitioner to allege facts which, if true, would entitle him (or her) to relief; merely

stating unsupported conclusions will not suffice." Brown v. United States, 656

F.2d 361, 363 (8th Cir. 1981) (citations omitted).

These grounds are not applicable.

### 3. Ineffective Assistance of Counsel

In order to gain relief for ineffective assistance of counsel, Buckhanan must

establish both that his counsel's performance "fell below an objective standard of

reasonableness," and that the deficient performance prejudiced his defense.

17

Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  The burden is on

Buckhanan to establish a "reasonable probability that, but for counsel's

unprofessional errors, the result would have been different."  Id. at 694.  "A

reasonable probability is a probability sufficient to undermine confidence in the

outcome."  Id.  "Unless a defendant makes both showings, it cannot be said that

the conviction . . . resulted from a breakdown in the adversary process that

renders the result unreliable."  Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005)

(quoting Strickland, 466 U.S. at 687).  The Court "need not address the

reasonableness of the attorney's behavior if the movant cannot prove prejudice."

Apfel, 97 F.3d at 1076 (citation omitted).

     Counsel's performance is deficient if it falls outside of the "wide range of

reasonable professional assistance," although there is a strong presumption that

counsel's conduct falls within this broad spectrum.  Strickland, 466 U.S. at 689.

"Judicial scrutiny of counsel's performance must be highly deferential.  It is all

too tempting for a defendant to second-guess counsel's assistance after

conviction or adverse sentence, and it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular

act or omission of counsel was unreasonable."  Id.  "Counsel's performance is

deficient when it is less competent than the assistance that should be provided by a reasonable attorney under the same circumstances." <u>Chambers v. Armontrout</u>, 907 F.2d 825, 828 (8th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 687).

> The two part <u>Strickland</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel.  [The defendant] has the burden to prove both that his counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial.

<u>Tinajero-Ortiz v. United States</u>, 635 F.3d 1100, 1103 (8th Cir. 2011) (citations omitted).

> "Courts should not upset a plea solely because of <u>post hoc</u> assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."  Instead, "judges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences."

<u>Meza-Lopez v. United States</u>, 929 F.3d 1041, 1045 (8th Cir. 2019) (quoting <u>Lee v. United States</u>, 137 S. Ct. 1958, 1967 (2017) (cleaned up).

### a)   **Validity of Buckhanan's Guilty Plea**

"The general rule is that a valid guilty plea waives all non-jurisdictional defects.  Stated differently, a valid guilty plea forecloses an attack on a conviction unless on the face of the record the court had no power to enter the conviction or impose the sentence."  <u>Walker v. United States</u>, 115 F.3d 603, 604 (8th Cir. 1997)

19

(citation omitted). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." Id. (quoting United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992)).

> While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings.

Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (citation omitted).

Buckhanan seeks to withdraw his guilty plea because his attorney failed to recommend a 3-level reduction in criminal history points for acceptance of responsibility. Buckhanan pled guilty to the instant offense on December 14, 2020. (PSR ¶ 18.) Buckhanan was interviewed by Probation on January 5, 2022 in the presence of counsel, admitted his involvement in the instant offense, and expressed remorse for his actions. (Id. ¶ 19.) However, six days later, he was arrested in Wright County, Minnesota for a drug and gun offense, which Probation stated showed that Buckhanan "did not voluntarily cease criminal conduct [and] it appears he has not accepted responsibility." (Id. ¶ 20.)

Buckhanan always maintained he was innocent of the charges in the Wright County case, and those charges were dismissed shortly before the sentencing hearing in the instant case.  The Government stated at the sentencing hearing that the charges were likely dropped because Buckhanan was going to receive a significant sentence in this case.  On the other hand, Defense Counsel stated that DNA test results on the gun in the state case showed that Buckhanan had not handled the gun at issue in the case.  The Court will never know why the charges were dismissed.  And it does not matter for the Court's analysis.

First, the Court finds that Buckhanan's argument about, assumedly, withdrawing his plea had his counsel better prepared him for sentencing or something similar, is nothing more than a "post hoc assertion about how he would have pleaded but for his attorney's deficiencies." Meza-Lopez, 929 F.3d at 1045.  Here, contemporaneous evidence makes clear that Buckhanan would have pled, in fact did plead, without the acceptance of responsibility points.  The plea agreement states that he had to fulfill certain requirements to receive the points, including that he "engage[d] in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report."  (Plea Agree. ¶ 8(e)(3).)

21

The instant charge was Buckhanan's ninth felony, although his first federal charge.  He cannot credibly claim ignorance of the requirement to remain law-abiding while awaiting sentencing, especially after going through the plea agreement in open court.  Thus, no contemporaneous evidence substantiates Buckhanan's claim.  Meza-Lopez, 929 F.3d at 1045.  The plea agreement anticipated that he likely would receive a 3-level reduction for acceptance of responsibility if, among other things, he fulfilled the requirements set forth in the plea agreement.  (Plea Agree. ¶ 8.)  At the time the PSR was written, Probation stated that Buckhanan had not fulfilled this requirement.  However, although Buckhanan now argues that since the state charges were dropped before his sentencing hearing, he should have received the 3-point reduction, there is no evidence that he and his attorney discussed this at the time of sentencing.  Buckhanan does not assert that his attorney said he would do so or that Buckhanan anticipated that his attorney would do so.

Second, and more importantly, failure to subtract 3 points from Buckhanan's base offense level for acceptance of responsibility did not have a prejudicial effect on Buckhanan's eventual sentence.  The Court adopted a Guidelines range of 210 – 262 months.  The Court varied down to 160 months.

22

Buckhanan argues that he would have been in criminal history category V if he had received a 3-level decrease for acceptance of responsibility.  With a criminal history category V and total offense level 32, Buckhanan's Guideline range would be 188 – 235 months.  A 160-month sentence is still far below the bottom-of-the-box at this Guideline range and therefore Buckhanan cannot prove he was prejudiced by his attorney's failure to make the 3-point argument at sentencing.  Thus, the Court need not address the reasonableness of his attorney's behavior. Apfel, 97 F.3d at 1076.

Likewise, Buckhanan's assertion that he never discussed his waiver to appeal under § 2255 with his attorney prior to his plea hearing is without merit. The only plea-related harm Buckhanan claims is the loss of the 3-level deduction for acceptance of responsibility.  He does not claim he would have chosen to go to trial without the advice he received.  Tinajero-Ortiz, 635 F.3d at 1103 (defendant has burden to prove both that his counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial).  Buckhanan's argument that his counsel did not help him understand the plea agreement, without more, appears to be a

23

form of "buyer's remorse" without supporting evidence, especially when he

signed the plea agreement stating he waived his rights "knowingly, intelligently,

and voluntarily" (Plea Agree. ¶ 12).  See United States v. Holmes, No. 4:17-CR-

3123, 2019 WL 4999107, at *3 (D. Neb. Oct. 8, 2019) ("The defendant's 'buyer's

remorse' doesn't support an ineffective assistance of counsel claim where the

defendant can't show that he actually got a bad deal.").

Thus, these arguments do not show that Counsel's performance was

deficient. These grounds are not applicable.

### b)      Failure to File Notice of Appeal

Normally, in order to succeed on a claim of ineffective assistance of
counsel, the defendant must show that counsel's performance was
deficient and that the deficient performance prejudiced the defense.
However, an attorney's failure to file a notice of appeal after being
instructed to do so by his client constitutes ineffective assistance
entitling petitioner to section 2255 relief, no inquiry into prejudice or
likely success on appeal being necessary.   For such a claim to
succeed, the defendant must show that he manifestly instructed his
counsel to file an appeal.  A bare assertion by the petitioner that he
made a request is not by itself sufficient to support a grant of relief,
if evidence that the fact-finder finds to be more credible indicates the
contrary proposition.

Walking Eagle v. United States, 742 F.3d 1079, 1082 (8th Cir. 2014) (citations

omitted) (cleaned up).

24

Here, Buckhanan merely states that his counsel did not file a timely appeal.  Importantly, the Court cannot find any allegation that Buckhanan made a request for his counsel to file an appeal.  Therefore, the Court finds that Buckhanan has not shown that Counsel failed to file an appeal after being instructed to do so.  This ground is inapplicable.

### c)      Failure to Provide the Court with a Transport Order

Buckhanan faults both his counsel and the AUSA for failing to prepare orders for the Court ordering the Marshal to transport him to FMC Rochester for medical treatment.  As discussed above, both the AUSA and defense counsel promptly communicated with the Court about this matter.  Given the futility of attempting such a transport, the Court did not request an order from either counsel after receiving their letters apprising the Court of the situation.  The Court is satisfied that both attorneys, especially defense counsel, did their best to assist the Court to help Buckhanan in this matter.  Unfortunately, a bed simply was not available for Buckhanan at that time.  This ground is inapplicable.

### 4.      Buckhanan's Misunderstanding Regarding Downward Departure

Buckhanan also states that the transcript of his sentencing hearing does not state why the Court granted his motion for a downward departure.  The Court

25

did not grant a departure.  The Court granted a variance below the Guidelines

range to avoid sentencing disparities, because the Court does not agree that high

methamphetamine purity should result in higher sentences, and for the other

reasons stated in the statement of reasons.   No further explanation is required.

This ground is inapplicable.

### 5.   Buckhanan's Habeas Petition Is Untimely

Because Buckhanan filed his § 2255 Motion more than one year after the

latest of the dates listed in § 2255(f) and because none of the exceptions to timely

filing apply, the Motion is untimely and is dismissed.

### C.   Appointment of Counsel

Buckhanan requests counsel for purposes of his § 2255 petition.  However,

> [t]here is no right to counsel on habeas review.  Nevertheless, an
> indigent pro se litigant who has met his burden of showing his
> complaint not to be frivolous pursuant to 28 U.S.C. § 1915(d) should
> be appointed counsel where necessary.  The standard for
> appointment of counsel in § 1915(d) cases is whether both petitioner
> and the court would benefit from the assistance of counsel.  Factors
> bearing on this determination include: the factual complexity of the
> issues; the ability of an indigent to investigate the facts; the existence
> of conflicting testimony; the ability of an indigent to present his
> claim; and the complexity of the legal issues.

Nachtigall v. Class, 48 F.3d 1076, 1081-82 (8th Cir. 1995) (citations omitted).  A

district court is mandated to appoint counsel for financially qualified petitioners

if it determines that an evidentiary hearing is required to resolve the claims.

<u>Green v. United States</u>, 262 F.3d 715, 716 (8th Cir. 2001).  If an evidentiary is not

necessary, the appointment of counsel is left to the court's discretion.  <u>Abdullah</u>

<u>v. Norris</u>, 18 F.3d 571, 573 (8th Cir. 1994).  A habeas petitioner may be appointed

counsel "if the interests of justice so require."  <u>Id.</u>; 18 U.S.C. § 3006A(a)(2)(B).

The Court has reviewed Buckhanan's motion and concludes that an

evidentiary hearing is not necessary for the Court to resolve Buckhanan's claims,

because his motion is clearly time-barred.  The Court further concludes that the

interests of justice do not require the appointment of counsel.  This case is neither

factually nor legally complex, and the Court can resolve Buckhanan's claims

based on the pre-existing record.  Buckhanan's motion and his subsequent

response to the Government's opposition motion demonstrate that he has the

ability to articulate his claims and file his pleadings.  Buckhanan's request for

appointment of counsel in connection with his pending § 2255 Motion is denied.

**D.    Motion to Proceed in District Court without Prepaying Fees or Costs**

The Court denies Buckhanan's Application to Proceed in District Court

without Prepaying Fees or Costs as moot because there is no filing fee for filing a

§ 2255 motion.

**IV.    CERTIFICATE OF APPEALABILITY**

With regard to the Court's procedural rulings, the Court concludes that no "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" nor would "jurists of reason . . . find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). With regard to the Court's decision on the merits, it concludes that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Id.</u> Therefore, the Court denies a Certificate of Appealability in this case.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.   Defendant Xavier Jerome Buckhanan's Pro Se Motion to Appoint Counsel **(Doc. 86)** is **DENIED**;

2.   Defendant Xavier Jerome Buckhanan's Pro Se Motion to Vacate Under 28 U.S.C. § 2255 **(Doc. 87)** is **DENIED**;

3.   Defendant Xavier Jerome Buckhanan's Pro Se Motion to Proceed in District Court without Prepaying Fees or Costs **(Doc. 89)** is **DENIED AS MOOT**;

4.   The Government's Motion to Dismiss Motion to Vacate Sentence Under 28 U.S.C. § 2255 as Time Barred **(Doc. 94)** is **GRANTED**;

5.      Defendant Xavier Jerome Buckhanan's Application for a Certificate of Appealability **(Doc. 96)** is **DENIED**; and

6.      Defendant Xavier Jerome Buckhanan's Pro Se Motion to Amend/Correct Motion to Vacate Sentence Under 28 U.S.C. § 2255 **(Doc. 97)** is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  May 17, 2024                                    s/Michael J. Davis
                                                        Michael J. Davis
                                                        United States District Court

29