## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                    **MEMORANDUM OF LAW & ORDER ON MOTION FOR COMPASSIONATE RELEASE**
                                    Criminal File No. 21-00074 (MJD)

XAVIER JEROME BUCKHANAN,

                Defendant.

Katharine T. Buzicky, Assistant United States Attorney, Counsel for Plaintiff.
Xavier Jerome Buckhanan, pro se.

## I.     INTRODUCTION

This matter is before the Court on Defendant Xavier Jerome Buckhanan's

Pro Se Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A).  (Doc.

98.)  For the following reasons, Defendant's motion is denied.

## II.     BACKGROUND

On December 14, 2021, Defendant Xavier Jerome Buckhanan pled guilty to

Count 1 of the Indictment, Conspiracy to Distribute Methamphetamine,

in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  On January 11, 2022,

while awaiting sentencing, Defendant was arrested in Wright County, Minnesota

for a drug and gun offense and state charges were filed, although they were eventually dismissed.  (PSR ¶ 4; Doc. 101 at 20-21.)

On July 6, 2022, the Court sentenced Defendant to a below-Guidelines sentence of 160 months in federal custody followed by five years supervised release.  He is currently incarcerated at USP Atwater in California and is expected to be released in April 2033.  BOP, Find an inmate, https://www.bop.gov/inmateloc/ (last accessed Aug. 8, 2024).  Defendant has a minimal disciplinary record in the BOP, with only one minor infraction for refusing a work assignment on October 22, 2022.  (Gov. Ex. 1.)

On February 2, 2024, Defendant filed an untimely § 2255 motion to vacate his sentence.  (Doc. 87.)  On May 17, 2024, the Court denied Defendant's motion on the merits and dismissed it as untimely.  (Doc. 101.)  The Court denied Defendant's application for a certificate of appealability.  (Id. at 29.)

Defendant "is currently placed" in the Reintegration Unit ("RU") at Atwater.  A goal of the RU includes "enhanced programming and the opportunity to practice skills in a safe environment."  (Doc. 99-1 (Def. Ex.) at 18.)

> A reintegration unit placement occurs when an inmate either "refuses to enter the general population" and his "fear is unsubstantiated or an irrational fear that cannot be verified by staff"

2

or "[t]he inmate is considered a verified protective custody case"
and is placed in the unit for his own security.

BOP, Reintegration Housing Unit [ ] Activation Procedures (May 9, 2016),

available at https://www.bop.gov/policy/om/003_2016.pdf (last accessed Aug. 7,

2024).

## III.    DISCUSSION

Defendant cites the following grounds for his motion for compassionate

release: that (1) Atwater provides inadequate medical care for his eye prosthesis

and for injuries received in a prison fight; (2) his placement in the RU amounts to

"cruel and unusual punishment" and he claims he has received "multiple

disciplinary reports" and has lost "good time"; (3) both the Prosecution and

Defendant's attorneys erred in their handling of his case below; and (4) he has

been rehabilitated.

### A.    Legal Framework

The court may, upon a defendant's motion following exhaustion of

administrative remedies or the lapse of 30 days from the receipt of such a request

by the warden of the defendant's facility, whichever is earlier,

reduce the term of imprisonment (and may impose a term of
probation or supervised release with or without conditions that does
not exceed the unserved portion of the original term of
imprisonment), after considering the factors set forth in section

3

3553(a) to the extent that they are applicable, if it finds that--
(i) <u>extraordinary and compelling reasons</u> warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

In pertinent part, the United States Sentencing Guidelines define

"extraordinary and compelling reasons" in the following way:

(b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

.   .   .

(B) The defendant is—

(i) suffering from a serious physical or medical condition

.   .   .

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

.   .   .

(4) Victim of Abuse.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

.   .   .

(B) physical abuse resulting in "serious bodily injury," . . .

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or

4

any other individual who had custody or control over the
defendant.

.  .  .

(d) Rehabilitation of the Defendant.—Pursuant to 28 U.S.C. § 994(t),
rehabilitation of the defendant is not, by itself, an extraordinary and
compelling reason for purposes of this policy statement. However,
rehabilitation of the defendant while serving the sentence may be
considered in combination with other circumstances in determining
whether and to what extent a reduction in the defendant's term of
imprisonment is warranted.

U.S.S.G. § 1B1.13(b), (d).

## B.    Exhaustion of Administrative Remedies

Before the Court will consider Defendant's claims, the claims must first be

presented to the BOP.  18 U.S.C. § 3582(c)(1)(A); United States v. Houck, 2 F.4th

1082, 1084 (8th Cir. 2021).  Claims not first presented to the BOP must be

dismissed without prejudice because the exhaustion requirement is a

"mandatory claim processing rule."  Houck, 2 F.4th at 1084.

Here, Defendant has demonstrated that he properly exhausted his

administrative remedies related to his medical care and his housing/"cruel and

"unusual punishment" in the RU claims.  (Doc. 99-1 at 9 (seeking compassionate

release based on his left eye prosthesis and poor vision, a bite injury to

his right index finger, anxiety, depression, PTSD, and being the caregiver for his

mother).)  However, Defendant has not exhausted his administrative remedies

with respect to claims related to his underlying conviction or to rehabilitation.

(Id.)  Accordingly, Defendant's motion will be denied without prejudice for

failure to exhaust administrative remedies as to those claims.  See 18 U.S.C. §

3582(c)(1)(A); Houck, 2 F.4th at 1084.  Also, as discussed below, even if

Defendant had exhausted his administrative remedies, those claims would be

denied on the merits.

### C.    Compassionate Release

None of Defendant's reasons satisfy his burden to state "extraordinary and

compelling" circumstances that comport with the statute.  See United States v.

Avalos Banderas, 39 F.4th 1059, 1062 (8th Cir. 2022) (stating that "the inmate

bears the burden to establish that compassionate release is warranted and the

district court is not required to investigate possible avenues for relief or to

develop the record in support of a motion") (citation omitted).

### 1.    Whether Atwater Provides Inadequate Medical Care for Defendant's Eyes and Finger Injury

Defendant has not met his burden to show he is "suffering from a medical

condition" that requires "specialized medical care that is not being provided and

without which the defendant is at risk of serious deterioration in health or

death."  U.S.S.G. § 1B1.13(b)(1)(C).  Although Defendant argues that without

proper medical care, his vision in his right eye—his remaining working eye—
will get worse and he will be more vulnerable to attacks from other inmates and
that he continues to require unique medical services for his prosthetic eye, his
own exhibits demonstrate that Defendant is receiving specialized medical care
outside of Atwater to address his medical needs related to both his prosthetic eye
and his remaining eye, which was injured in a prison fight.  Defendant is also
receiving treatment outside Atwater to address his partially amputated fingertip,
which was bitten off in the same fight.  (See Doc. 106-1 (Gov. Ex. 2) at 6, 8, 24-39
(medical care received after attack in prison wherein fingertip was bitten off and
Defendant received a corneal abrasion in his right eye (Doc. 106-1 at 36)); Doc. 99
(Def. Ex.) at 25-33).)  Although Defendant's prosthesis was apparently not
damaged in the fight discussed above, the Court acknowledges, as it did during
Defendant's sentencing, that Defendant's prosthesis requires specialized care.
However, because there is no optometrist onsite, Defendant is now scheduled for
an "urgent" offsite optometry consult, which demonstrates that Atwater will
schedule offsite medical visits for complex care it is unable to provide.  (Doc. 106-
1 (Gov. Ex. 2) at 1.)

In addition, although Defendant argues that he cannot see healthcare providers at Atwater even though he puts in requests and is "just trying to schedule an appointment" (Doc. 107 at 23), the truth is that Defendant was told repeatedly to use the prison's "sick call system" during designated hours, that electronic appointment requests and walk ups are not accepted, and that is why he kept getting turned away.  (Doc. 99 at 20-24.)  Despite this, Defendant kept emailing for an appointment.  (Id.)  Defendant's failure to follow the appropriate process undermines his position.  Defendant's argument that care is unavailable is without merit.  (The BOP Atwater Clinical Encounter—Administrative Note cited above that includes the "urgent" optometrist referral is further evidence of the availability of healthcare professionals at Atwater.)

Based on this discussion, the Court denies Defendant's motion for early release on this basis.

### 2. Whether Defendant's Placement in the RU Amounts to "Cruel and Unusual Punishment"

Although Defendant claims that he suffers from anxiety and stress and has fears that the general population at Atwater "may be able to get to him" (Doc. 98 at 6), which indicates a desire to be in the RU, he also states that "getting into the reintegration unit was cruel and unusual" (Doc. 107 at 5), which indicates that he

does not want to be in the RU.  However, the Court need not try to discern

Defendant's true thoughts because Defendant does not claim to be a victim of

abuse that resulted in "serious bodily injury" <u>and</u> "that was committed by, or at

the direction of, a correctional officer, an employee or contractor of the Bureau of

Prisons. . . ."  U.S.S.G. § 1B1.13(b)(4)(B).  Moreover, while Defendant claims he

has received "multiple disciplinary reports" and has lost "good time" (Doc. No.

98 at 4), records document only one incident that resulted in 30 days' loss of

commissary privileges and no loss of good time.  (Gov. Ex. 1.)  Finally, as a

matter of law, prison conditions, policies, and programs that affect a large

number of inmates are not "a particularized reason" for an individual

Defendant's early release.  <u>See</u> <u>United States v. Catano-Morales</u>, No. 18-cr-242

(ADM/TNL), 2022 WL 3647878, at *2 (D. Minn. Aug. 24, 2022) (noting that prison

conditions "affect all inmates and are not a particularized reason for [a

defendant's] release") (citations omitted).  As the Government notes, Defendant

may instead seek relief through a civil suit, if he wishes to challenge the

conditions of his confinement.  (Doc. 105 at 10 (citations omitted).)  Accordingly,

on the record before it, the Court denies Defendant's motion for early release on

this basis.

9

**D.    Defendant's Other Claims are Not Properly Before the Court**

Defendant did not exhaust administrative remedies with respect to his underlying conviction or rehabilitation.  Thus, these parts of the motion are denied without prejudice.  <u>See</u> 18 U.S.C. § 3582(c)(1)(A); <u>Houck</u>, 2 F.4th at 1084.

Moreover, even if these claims were properly before the Court, the claims would be denied on the merits.  First, Defendant may not use the compassionate release statute to challenge his conviction or sentence.  The sole way to do so is via a motion pursuant to 28 U.S.C. § 2255.  <u>See</u> <u>United States v. Crandall</u>, 25 F.4th 582, 586 (8th Cir. 2022) (holding that defendant could not "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead") (citation omitted); <u>United States v. Mallett</u>, No. CR 17-264(3) (DWF), 2023 WL 4203155, at *2 (D. Minn. June 27, 2023).  Defendant previously filed such a motion, which the Court denied on May 17, 2024.  Second, rehabilitation is also no basis for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  <u>See</u> 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); <u>United States v. Logan</u>, 532 F. Supp. 3d 725, 735 (D. Minn. 2021) ("Prisoners are <u>supposed</u> to follow the rules, take classes, work at a job, and otherwise attempt to improve

themselves. . . .  [T]here is nothing 'extraordinary and compelling' about a

prisoner who simply does the things that prisoners are supposed to do.")

(emphasis in original).

**E.     18 U.S.C. § 3553(a) Factors**

The Court finds that early release would be contrary to the factors set forth

in 18 U.S.C. § 3553(a).  Defendant's history of violence and the seriousness of his

offense, alone, weigh against early release.  Defendant's sentence was also

substantially below the Guidelines range and releasing him after serving only

approximately 15% of his sentence would create unwarranted sentencing

disparities with others who have committed similar crimes and would not reflect

the seriousness of Defendant's offense, protect the public, provide just

punishment, or afford adequate deterrence to criminal conduct. See United States

v. Jackson, No. 15-CR-2607 (PAM/TNL), 2021 WL 806366, at *2 (D. Minn. Mar. 3,

2021) (§ 3553(a) factors, including that defendant had only served 20% of

sentence, need to avoid unwarranted sentencing disparities, and need to protect

public, weighed in favor of denying motion for compassionate release); United

States v. Davila, No. 20-CR-8(1) (ECT/TNL), 2022 WL 1553569, at *3 (D. Minn.

May 17, 2022) (§ 3553(a) factors, including that defendant had only served small

percentage of sentence and need to protect public, weighed in favor of denying

motion for compassionate release).

Therefore, Defendant's motion is also denied on this basis.

**IV.   ORDER**

Based upon the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED** that Defendant's Motion For Compassionate Release Under 18 U.S.C.

§ 3582(c)(1)(A) **[Doc. 98]** is **DENIED in part and DENIED without prejudice for**

**failure to exhaust administrative remedies in part** as set forth fully above.

Date:   August 12, 2024

s/Michael J. Davis
Michael J. Davis
United States District Court